UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

EJAZ BALUCH,

                      Plaintiff,

                -v-

300 WEST 22 REALTY, LLC, 317 WEST 22 REALTY, LLC, 147 FIRST REALTY, LLC (collectively d/b/a ICON REALTY MANAGEMENT, LLC), and TERRENCE LOWENBERG,

                      Defendants.

───────────────────────────────

21-CV-9747 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Ejaz Baluch brings this action against Defendants 300 West 22 Realty, LLC, 317 West 14 Realty, LLC, and 147 First Realty, LLC (collectively d/b/a Icon Realty Management, LLC ("Icon")) claiming (1) discrimination on the basis of disability in violation of the Americans with Disabilities Act (ADA); (2) retaliation for his opposition to national origin discrimination as prohibited by Title VII of the Civil Rights Act of 1964; (3) discrimination on the basis of disability in violation of the New York State Human Rights Law (NYSHRL); (4) retaliation for his opposition to discrimination prohibited by the NYSHRL; (5) discrimination on the basis of disability in violation of the New York City Human Rights Law (NYCHRL); and (6) retaliation for his opposition to discrimination prohibited by the NYCHRL. He also brings suit against Defendant Terrence Lowenberg claiming (7) aiding and abetting discrimination and retaliation in violation of the NYSHRL; and (8) aiding and abetting discrimination and retaliation in violation of the NYCHRL. Before the Court is Defendants' motion to dismiss the complaint for failure to state a claim. For the reasons that follow, that motion is granted in part and denied in part.

1

I.  **Background**

The following account of the factual background comes from the complaint, whose allegations the Court takes as true at this point in the litigation. The Court also takes judicial notice of the record from previous, closely related litigation involving these same parties (*Baluch v. 300 West 22 Realty*, LLC et al., No. 19-CV-5077 (GBD) (S.D.N.Y.) ("*Baluch I*")). While "[g]enerally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself," *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), a court may take judicial notice of "prior pleadings, orders, judgments, and other items appearing in the Court's records of prior litigation that is closely related to the case *sub judice*." *Hackett v. Storey*, No. 03-CV-395 (JBA), 2003 WL 23100328, at *2 (D. Conn. Dec. 30, 2003).

Baluch suffers from hypertension, anxiety, and hypothyroidism. (Compl. ¶ 8.) In 2012, he began working for Icon as a general manager, where he was responsible for the operation of three hotels owned by Icon. (Compl. ¶¶ 9–10.) On May 30, 2019, Baluch, who is of Pakistani descent, filed a complaint of national origin discrimination and retaliation against Icon, Lowenberg, and a third defendant (who is not party to the present litigation), beginning the *Baluch I* litigation. (Compl. ¶ 12; Def. Ex. A.) Lowenberg is one of the owners of Icon and functioned as Baluch's supervisor. (Compl. ¶ 13.) On March 18, 2020, Baluch filed an amended complaint in *Baluch I* restating the claims from his original complaint but including some additional factual detail. (Compl. ¶ 16; Def. Ex. B.) On March 24, 2020, "Baluch provided Icon with a doctor's note reflecting that, pursuant to New York State Executive Orders and Department of Health guidance during the Covid-19 pandemic, . . . he would necessitate self-quarantining for fourteen days due to his possible exposure to an individual with Covid-19." (Compl. ¶ 14.) The next day, on March 25, 2020, Icon fired Baluch, citing the impact of Covid-

19. (Compl. ¶ 17.) He was replaced in his role by a white woman who had not previously complained of discrimination. (Compl. ¶ 19.)

Eventually the parties settled *Baluch I*, with the defendants agreeing to pay Baluch $250,000. (Def. Ex. H.) Specifically, on July 30, 2020, the defendants made an offer of judgment pursuant to Federal Rule of Civil Procedure 68 in *Baluch I*, which was accepted by Baluch, and judgment was entered and the case dismissed on August 13, 2020. (Def. Ex. H.) The offer of judgment stated that "[a]cceptance of this offer by Plaintiff shall effect an entry of judgment against Defendants, pursuant to the terms of this offer, dismissing with prejudice all of Plaintiff's claims against Defendants in this action. Said judgment is to have no effect whatsoever except in settlement of this case." (Def. Ex. G.) On November 22, 2021, Baluch filed the instant case ("*Baluch II*"), claiming in essence that his termination was the result of discrimination on the basis of disability and also was retaliation for his opposition to the discrimination described in *Baluch I*.

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *id*. at 558, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III. Discussion

#### A. Res Judicata

The parties spend much time disputing whether or not Baluch's claims in the instant action are barred by res judicata due to the settlement and dismissal of *Baluch I*. "The doctrine of res judicata provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021) (internal quotation marks omitted). "The doctrine bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Id.* (internal quotation marks omitted).

The Defendants insist that Baluch's current action is barred by the final judgment in *Baluch I*, because that case was settled after Baluch was fired, meaning that the disability discrimination and retaliation claims forming the basis of this lawsuit "could have been raised" in the previous action. Federal Rule of Civil Procedure 15(c) does indeed allow a plaintiff to file a supplemental pleading to assert a new claim based on conduct by the defendant subsequent to the initial filing. But while a plaintiff *may* file a supplemental pleading based on actionable conduct by the defendant subsequent the commencement of the lawsuit, "he is not required to do so, and his election not to do so is not penalized by application of res judicata to bar a later suit on that subsequent conduct." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996). "The timeframe for assessing claims that could have been raised during the prior litigation ends when the complaint in that action is filed. *Horti Americas, LLC v. Jacob's Vill. Farm Corp.*, No. 21-915-CV, 2022 WL 38719, at *2 (2d Cir. Jan. 5, 2022). Res judicata "does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated." *Id.* (quoting *Los Angeles Branch NAACP v. Los Angeles Unified School*

4

*District*, 750 F.2d 731, 739 (9th Cir.1984); *see also Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[F]or res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action."). To hold otherwise would be to create a "potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the pending litigation or lost." *Los Angeles Branch NAACP*, 750 F.2d at 739 n.9.

The original complaint in *Baluch I* was filed in May 2019, well before the events surrounding Baluch's termination. While Baluch had the right to seek leave to file a supplemental pleading asserting claims deriving from his termination in *Baluch I*, he was under no obligation to do so, and is not to be penalized by the application of res judicata in this action for his choice to bring the claims in a separate lawsuit. To the extent Baluch's claims derive from his termination, therefore, they are not barred by res judicata.

The Defendants argue that, at the very least, Baluch's retaliation claims should be barred as part of the same "nucleus of operative facts" as the claims resolved in *Baluch I*, because Baluch alleges that his termination was in "furtherance of [Defendants'] longstanding, documented intention to retaliate against" him. (Compl. ¶ 17.) In applying res judicata, courts "look to see 'whether the same transaction or *connected series of transactions* is at issue.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 289 (2d Cir. 2000) (quoting *United Technologies*, 706 F.2d at 1260). In making this determination, "'[t]ransaction' must be given a flexible, common-sense construction that recognizes the reality of the situation." *See Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997). A "first judgment will generally have preclusive effect only where the transaction or connected series of transactions at

issue in both suits is the same, that is 'whe[re] the same evidence is needed to support both claims, and whe[re] the facts essential to the second were present in the first.'" *First Jersey Sec., Inc.*, 101 F.3d at 1463–64 (quoting *NLRB v. United Technologies Corp.,* 706 F.2d at 1260). Thus, for example, in a suit for breach of a long-term contract, res judicata would preclude any subsequent lawsuits brought on claims of breach arising before the first suit, but would not bar a suit for a breach that had not occurred when the first suit was brought. *Id.* at 1464.

The fact essential to Baluch's retaliation claim in this case is the fact of his termination in 2020, which he claims was a retaliatory measure for his bringing a discrimination lawsuit against Icon. That fact was simply not present when he filed his first lawsuit in 2019, and so cannot properly be considered to be part of the same transaction, even if Baluch is asserting that his termination was an outgrowth of a continuous discriminatory intent and practice by the defendants. Just as in the example of a breach of long-term contract, the fact that some of the underlying facts are alleged to be the same in the two lawsuits—such as the existence of a long-term contract or of longstanding discriminatory intent—does not bar the second set of claims when they are essentially based on new conduct that occurred after the first lawsuit was filed.

### B. Disability Discrimination Claims

#### 1. ADA Discrimination Claim

While res judicata does not bar Baluch's disability discrimination claims, Defendants are correct that dismissal is nonetheless appropriate. In order to state a claim for employment discrimination in violation of the ADA, a plaintiff must plausibly allege that "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. New York City Dep't*

*of Educ.*, 804 F.3d 231, 234–35 (2d Cir. 2015).  In order to defeat a motion to dismiss, an ADA plaintiff need only "'give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir.2015)).  Plaintiffs alleging employment discrimination must allege that disability discrimination was the but-for cause of any adverse employment action.  *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).  "A qualified individual can base a discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir.2003)).  While it is not entirely clear under which theory Baluch brings his claim, the Court understands it be made under both a reasonable accommodation and intentional discrimination theory.

In order to discriminate on the basis of a disability, an employer must first be aware that their employee has a disability in the first place.  *See Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312 (ER), 2013 WL 1809772, at *6 (S.D.N.Y. Apr. 30, 2013).  Here, Baluch has not alleged any facts that would show that Icon or Lowenberg was aware of his alleged conditions.  Though he claims he suffers from anxiety, hypertension, and hypothyroidism, he does not claim to have ever told his employers about these conditions, and he offers no allegations that the manifestations of those conditions were such that their existence would be obvious from mere observation.  *Cf. Garcia v. Kings Cnty. Hosp. Ctr.*, No. 16-CV-3151 (ER), 2018 WL 389212, at *5 (S.D.N.Y. Jan. 11, 2018) ("[I]n cases in which the disability was known or obvious . . . an employee need not issue an express request for accommodation.").  While he alleges that he offered the Defendants a doctor's note, the doctor's note contains nothing that would put the

Defendants on notice as to Baluch's alleged medical conditions; it merely "reflect[ed] that, pursuant to New York State Executive Orders and Department of Health guidance during the Covid-19 pandemic, [Baluch] would necessitate self-quarantining for fourteen days due to his possible exposure to an individual with Covid-19." (Compl. ¶ 14.) On this ground alone, Baluch's ADA discrimination claim must fail.

Even if it is assumed that Baluch plausibly alleged that the defendants knew about his medical conditions, he has not sufficiently pleaded facts showing that he suffers from a disability within the meaning of the ADA. An individual is considered disabled within the meaning of the ADA if she has "a physical or mental impairment that substantially limits one or more [of her] major life activities," or she is "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Th[is] definition of disability [is to be] construed in favor of broad coverage." *Id.* § 12102(4)(A); *see Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21–22 (2d Cir. 2015). "To determine whether or not a plaintiff suffers from a disability, the Supreme Court compels district courts to follow a three-step process to conclude: '(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment.'" *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 145 (E.D.N.Y. 2018) (quoting *Mazza v. Bratton*, 108 F.Supp.2d 167, 173 (E.D.N.Y. 2000)). A plaintiff must plausibly allege facts sufficient to meet all three of these steps in order to avoid dismissal.

Baluch has sufficiently alleged facts indicating that he has an impairment. EEOC regulations state that "[a]ny mental or psychological disorder," including an "emotional or mental illness," qualifies as a covered impairment. 29 C.F.R. § 1630.2(h)(2). In the Second Circuit, EEOC regulations are entitled to "great deference in interpreting the ADA." *Muller v.*

*Costello*, 187 F.3d 298, 312 (2d Cir.1999); *Reeves v. Johnson Controls World Servs.*, 140 F.3d 144, 150 n.3 (2d Cir.1998); *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 257 (E.D.N.Y. 2015). Thus, his anxiety qualifies as a mental impairment. *See Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742 (VEC), 2021 WL 4267815, at *10 (S.D.N.Y. Sept. 20, 2021) (finding "generalized anxiety disorder" to qualify as an impairment); *Laface*, 349 F. Supp. 3d at 146 (finding "stress and anxiety" to qualify as an impairment at the pleading stage). The EEOC also considers "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as . . . cardiovascular . . . and endocrine" to be a physical impairment covered by the ADA. 29 C.F.R. § 1630.2(h)(1). Hypertension, an impairment of the cardiovascular system, qualifies as a physical impairment. *Raffaele v. City of New York*, No. 00–CV–3837, 2004 WL 1969869, at *13 (E.D.N.Y. Sept. 7, 2004); *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 391 (E.D.N.Y. 2016). Similarly, "hypothyroidism is, by definition, an impairment of the endocrine system," and so also qualifies as an impairment. *Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 447 (6th Cir. 2018). Thus, Baluch has sufficiently alleged that his anxiety, hypertension, and hypothyroidism all qualify as "impairments" under the ADA.

However, merely being impaired is not enough to qualify as being "disabled" within the meaning of the ADA. Not every physical or mental impairment is a considered a disability within the meaning of the ADA. *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 259 (E.D.N.Y. 2015); 29 C.F.R. § 1630.2(j)(1)(ii) ("[N]ot every impairment will constitute a disability within the meaning of [the ADA]."). An impairment is a disability within the meaning of the ADA only if it substantially limits a major life activity. 29 C.F.R. § 1630.2(j)(1)(ii). Baluch has failed to allege any facts whatsoever about which of his major life activities have been substantially limited by his impairments. Allegations that "merely track the language of the

statute" or "[v]ague, conclusory assertions without details on how [a plaintiff's] condition actually affects a major life activity are insufficient" to survive a motion to dismiss. *Cain v. Mandl Coll. of Allied Health*, No. 14-CV-1729 (ER), 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017); *see also Shine v. New York City Hous. Auth.*, No. 19-CV-04347 (RA), 2020 WL 5604048, at *7 (S.D.N.Y. Sept. 18, 2020) (noting that "courts in this Circuit have established that plaintiffs must plead more than vague or conclusory allegations regarding 'difficulty' or 'trouble' conducting a major life activity."); *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014). Here, Baluch has not made even vague or conclusory assertions, but has made no allegations about how his impairments affect a major life activity. This is insufficient to survive a motion to dismiss. *See Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2020 WL 2489774, at *11 (E.D.N.Y. May 14, 2020) (holding that Plaintiff failed to plead that his condition substantially limited major life activities where his "numerous conclusory statements regarding his disability do not expand on how the disability affects . . . major life activities"); *Shine*, 2020 WL 5604048, at *4 (S.D.N.Y. Sept. 18, 2020) ("A plaintiff must specifically allege which major life activities are substantially limited by the claimed disability to establish a *prima facie* case" of disability discrimination.); *Tillman v. New York City Dep't of Hum. Res. Admin.*, No. 20-CV-1153 (MKV), 2021 WL 1089647, at *4 (S.D.N.Y. Mar. 22, 2021) (motion to dismiss granted where plaintiff's complaint "[did] not describe any major life activity that [was] limited by her litany of medical conditions").

There are certain impairments which the EEOC finds will "virtually always be found to impose a substantial limitation on a major life activity," 29 C.F.R. § 1630.2(j)(3)(ii), and thus a bare allegation of their existence might be enough in certain circumstances to survive a motion to dismiss even without an accompanying description of which major life activities they

substantially limit. However, none of Baluch's alleged conditions are on the list of EEOC conditions which will almost always qualify as a disability, and so his bare allegation of suffering from anxiety, hypertension, and hypothyroidism, without more, is insufficient to plead that he is disabled within the meaning of the ADA. *See* 29 C.F.R. § 1630.2(j)(3)(iii) (listing conditions which will almost always impose a substantial limitation on a major life activity); *Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742 (VEC), 2021 WL 4267815, at *11 (S.D.N.Y. Sept. 20, 2021) ("Plaintiff's alleged mental health condition, generalized anxiety disorder, is not on the list of EEOC conditions likely to qualify as a disability by its very nature. Accordingly, allegations that Plaintiff has been diagnosed with the condition, without more, are insufficient to plead that Plaintiff suffered from an ADA-qualifying disability.").

Accordingly, Baluch's claims of disability discrimination under the ADA are dismissed.

### 2. NYSHRL and NYCHRL Disability Discrimination Claims

Claims under the NYCHRL are governed by a more liberal standard than are claims brought under Title VII. Courts must construe the provisions of the NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011)). Moreover, in 2019 the NYSHRL was amended "to establish that its provisions should be construed liberally even if 'federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article,' have been construed narrowly." *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837 (GHW), 2022 WL 912940, at *7 (S.D.N.Y. Mar. 28, 2022) (quoting *Deveaux v. Skechers USA, Inc.*, No. 19-CV-9734, 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020)); *see* Act of Aug. 12, 2019, sec. 6, 2019 N.Y. Laws 160 (codified at N.Y. Exec. Law § 300 (2019)). "[T]he effect of [that amendment] is to render the standard for claims [under the NYSHRL] closer to the

11

standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019). Both the NYSHRL and the NYCHRL "have a broader definition of 'disability' than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity." *Thomson v. Odyssey House*, 2015 WL 5561209, at *18 (S.D.N.Y. Sept. 21, 2015) (quoting *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009)).

Nonetheless, even under the more liberal NYCHRL standard (and therefore under the NYSHRL as well), it is still necessary that the plaintiff allege that he was treated "less well" because of his disability. *Mihalik*, 715 F.3d at 110. Here, Baluch has failed to allege facts rendering it plausible that Icon and Lowenberg knew he had a disability in the first place. A plaintiff cannot be treated less well "because of" a disability if the alleged discriminators are not even aware of the existence of that disability. Therefore, Baluch's NYCHRL and NYSHRL disability claims are dismissed.

### C. Retaliation Claims

#### 1. Title VII Retaliation Claim

Title VII prohibits an employer from taking an adverse employment action against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . in an investigation, proceeding, or hearing under this [Title VII]." 42 U.S.C. § 2000e–3(a). "In order to establish a prima facie case of retaliation, [a plaintiff] must show (1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). "[T]he allegations in the complaint need only give plausible support to

the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir.2015). "[T]he burden that a plaintiff must satisfy in order to establish her initial prima facie case has been described as 'not onerous,' and 'minimal and de minimis.'" *Dawson v. New York City Transit Auth.*, 624 F. App'x 763, 766 (2d Cir. 2015) (citations omitted).

In regard to the causation prong, "a plaintiff must plausibly plead a connection between the [adverse] act and his engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). The plaintiff must plausibly allege that the retaliation was the "but-for" cause of the employer's adverse action, and not just a "substantial" or "motivating" factor in the decision. *Id*. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000)).

Here, Baluch alleges no direct evidence of retaliatory animus beyond merely conclusory statements that "[his] termination was a blatant act of retaliation, with the Covid-19 pandemic being used as a cover and pretext for a previously stated desire to terminate Baluch if he did not cease complaining about discrimination." (Compl. ¶ 20.) *See Iqbal*, 556 U.S. at 678 (a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (citing *Twombly*, 550 U.S. at 556)). He must therefore rely on allegations of indirect evidence of retaliatory animus to survive Defendants' motion to dismiss.

While his conclusory allegations do not suffice as direct evidence of retaliatory animus, Baluch has met the "low burden" of giving plausible support to the existence of indirect evidence of retaliation. *Brown v. City Univ. of New York*, No. 21-CV-854 (PKC) (MMH), 2022 WL 4637818 at *18 (E.D.N.Y. Sept. 30, 2022). While the ten-month gap between Baluch's firing and his initial complaint of discrimination is near the "'outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship' between a protected activity and an allegedly retaliatory action," the Second Circuit has "not drawn a bright line" defining those outer limits. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (quoting *Gorman–Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554–55 & n.5 (2d Cir.2001)). Courts in the Second Circuit have found the existence of a causal connection when the gap between the protected conduct and the adverse employment action was anywhere from five to as long as seventeen months. *See Lee v. Overseas Shipholding Grp., Inc.*, No. 00-9682 (DLC), 2001 WL 849747 (S.D.N.Y. July 30, 2001) (seventeen-month gap sufficient at the motion to dismiss stage); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 n.5 (2d Cir. 2001) (collecting cases where a causal connection was found where the adverse action was taken anywhere between six weeks and eleven months from the protected conduct); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (holding more-than-eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[F]ive months is not too long to find the causal relationship.").

It is true that "[w]here . . . a plaintiff relies exclusively on timing to plead causation, the temporal proximity between the protect[ed] activity and adverse employment action must be 'very close.'" *See Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 441

14

(E.D.N.Y. 2015) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Indeed, district courts within the Second Circuit have held that "the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases). However, "the inquiry is dependent on the relevant circumstances of the case." *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 302 (E.D.N.Y. 2016), and Baluch does not rely exclusively on the temporal proximity between filing *Baluch I* and his termination. *See Quarless v. Brooklyn Botanic Garden Corp.*, No. 11-CV-5684, 2014 WL 2767085, at *6 (E.D.N.Y. June 18, 2014), *aff'd*, 611 F. App'x 28 (2d Cir. 2015) ("A seven or eight month gap between a plaintiff's protected activity and the adverse action can support an inference of causation where other circumstances bolster the otherwise attenuated connection between the protected activity and the retaliatory action." (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 128–29 (2d Cir. 2013))); *Littlejohn*, 795 F.3d at 319 ("A causal connection in retaliation claims can be shown . . . indirectly[] . . . through other circumstantial evidence . . . .").

Here, Baluch filed an amended complaint in his original lawsuit mere days before his termination. Moreover, he also alleges some facts arguably suggesting that the Defendants' proffered reason for his termination (that he was let go due to the impact of Covid-19) was pretextual: one of the three hotels he managed was still in operation despite the impact of the pandemic on Icon's business operations, and his position was filled by another employee, instead of being eliminated entirely as one might expect in a situation where the pandemic had rendered the position redundant. *Cf. Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 134 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the

explanation that the employer is dissembling to cover up a discriminatory purpose."). Though these facts, "considered individually, might not amount to much[,] [t]aken together . . . they plausibly paint a mosaic of retaliation." *Vega*, 801 F.3d at 92. Drawing all reasonable inferences in favor of the Plaintiff, as it must at the motion to dismiss stage, the Court finds that Baluch has met the "liberal" standard at the pleading stage to defeat a motion to dismiss. *Lee v. Overseas Shipholding Grp., Inc.*, No. 00-CV-9682 (DLC), 2001 WL 849747 (S.D.N.Y. July 30, 2001). Defendants' motion to dismiss Baluch's Title VII retaliation claim is denied.

### 2. NYSHRL and NYCHRL Retaliation Claims

"The same standards govern retaliation claims" under both Title VII and the NYSHRL, *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020), while "the retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010). Because Baluch's complaint is sufficient to survive a motion to dismiss his Title VII retaliation claims, his NYCHRL and NYSHRL claims must survive as well. Accordingly, Defendants' motion to dismiss Baluch's NYCHRL and NYSHRL retaliation claims is denied.

### D. Aiding and Abetting

""[U]nder both Exec[.] Law § 296(6) and NYC Admin. Code § 8–107(6), an individual employee may be held liable for aiding and abetting discriminatory conduct." *Krause v. Lancer & Loader Grp.*, 40 Misc.3d 385, 965 N.Y.S.2d 312, 323 (Sup. Ct., N.Y. Cty. 2013). "The language of both [the] NYSHRL and [the] NYCHRL is identical, providing that 'it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.' " *Id.* at 323 n.7 (quoting N.Y. Exec. Law § 296(6); N.Y.C. Admin Code § 8-107(6)). Thus, "the Administrative Code . . . is

subject to the same analysis as the Executive Law." *Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103, 113 (E.D.N.Y. 2001).

"To make out an aiding and abetting claim, the pleadings must allege that "[the defendant] 'actually participate[d] in the conduct giving rise to a discrimination claim.'" *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020) (quoting *Xiang v. Eagle Enters., LLC*, No. 19-CV-1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020)). A defendant can be held liable "'for aiding and abetting allegedly unlawful discrimination by [an] employer even where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability,' so long as the employer's conduct has also been found to be discriminatory under the NYSHRL [or NYCHRL]." *Xiang v. Eagle Enterprises, LLC*, No. 19-CV-1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020) (quoting *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012)).

Here, Baluch alleges that Lowenberg was an owner of Icon and functioned as Baluch's supervisor. He has pleaded sufficient facts to allege that Icon retaliated against him in violation of the NYCHRL and NYSHRL. However, Baluch does not allege that Lowenberg "actually participated" in the conduct giving rise to the discrimination and retaliation claims. He makes no allegations whatsoever as to Lowenberg's participation in the decision to fire him, and indeed makes no claims at all as to who made that decision or even informed him of it. In his brief, Baluch fails to respond to Defendants' arguments on these points. Baluch's aiding and abetting claims under the NYCHRL and NYSHRL are dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

17

Because the claims against Defendant Lowenberg are dismissed, the Clerk is directed to terminate Lowenberg as a party.

Defendant Icon shall file an answer to the surviving claims within 21 days after the date of this opinion and order.

The Clerk of Court is respectfully directed to close the motion at Docket Number 15.

SO ORDERED.

Dated: January 5, 2023
       New York, New York

                                  _____
                                  J. PAUL OETKEN
                                  United States District Judge